**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**Kane K. HUI, et al., Defendants.**

**No. Civ. 98–507 ACK.**

United States District Court, D. Hawaii.

July 6, 1999.

Stacey M. Robinson, McCorriston Miho Miller & Mukai, Honolulu, HI, for Allstate Insurance Company, plaintiff.

Wayne P. Nasser, Ashford & Wriston, Honolulu, HI, for Kane S. HUI, defendant.

Wayne P. Nasser, Wayne P. Nasser, Ashford & Wriston, Honolulu, HI, for Judy W. Hui, defendant.

Wayne P. Nasser, Wayne P. Nasser, Ashford & Wriston, Honolulu, HI, for Kane K. Hui, defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND

On June 15, 1998, Plaintiff Allstate Insurance Company ("Allstate") filed a complaint for declaratory relief seeking a declaration that it was not required to defend or indemnify one of its insureds, Defendant Kane K. Hui ("Defendant"),[1] with respect to any claims asserted in two separate lawsuits in California.[2] Allstate has insured Defendant under Allstate Deluxe Homeowner's Policy No. 017–829–969 (the "policy"), which provides family liability coverage against liabilities resulting from "bodily injury or property damage arising from an accident," Plaintiff's Separate Concise Statement of Facts, Feb. 11, 1999, Exh. E, at 23, but argues that the policy does not cover the underlying actions.[3]

The Hon Complaint alleges that Defendant, acting as a director of ExperVision in conjunction with other directors, offered and sold to the underlying plaintiffs a total of $650,000 of promissory notes that turned out to be worthless when ExperVision subsequently filed for bankruptcy in March 1995. The Hon Complaint alleges that Defendant and the other directors made material misrepresentations (Count I) and committed fraud (Count II).

The Hui Complaint alleges that Defendant, acting in conjunction with other ExperVision directors, caused the company to file a civil lawsuit against plaintiffs without grounds for the action; the civil lawsuit underlying the complaint had been dismissed in June 1997 for lack of prosecution. The Hui Complaint included a cause of action for malicious prosecution as well as a claim for punitive damages.[4]

In both cases, Allstate initially agreed to provide a defense to Defendant, but expressly reserved its rights to refuse to cover Defendant based on the terms of the policy. Under the terms of the policy, Allstate was obligated to "pay damages which an *insured person* becomes legally obligated to pay because of *bodily injury* or *property damage* arising from an accident. . . ." Plaintiff's Separate Concise Statement of Facts, Feb. 11, 1999, Exh. E, at 23 (emphasis in original). The policy defines "bodily injury" and "property damage" to mean the following:

> **"Bodily Injury"**—means physical harm to the body, including sickness or disease, and resulting death . . .

> **"Property Damage"**—means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

*Id.* at 3 – 4.

The policy does not provide coverage for all types of liability arising from "bodily injury" and "property damage." Instead, it explicitly excludes coverage for bodily injury or property damage resulting from "[a]n act or omission intended or expected to cause bodily injury or property damage," *id.* at 23, ¶ 1(a); a criminal act or omission, regardless whether the insured person is actually charged with or convicted of a crime, *see id.* at 24, ¶ 2(a); the

---

1. Allstate actually named Kane Hui and his wife, Judy W. Hui, as defendants. However, because the merits of the underlying actions only concern Kane Hui's actions, the Court will refer to a singular defendant.

2. *Kee Hwa Cheng et al. v. Michael T. Hon et al.*, Civil No. 768990, Superior Court of the State of California, County of Santa Clara (the "Hon Complaint") was filed on September 25, 1997. Subsequently, a second complaint entitled *Kee Hwa Cheng et al. v. Steve Hui et al.*, Adversary No. 98–5196, United States Bankruptcy Court for the Northern District of California, San Jose Division (the "Hui Complaint") was filed on June 2, 1998.

3. Plaintiffs in both of the underlying actions are proceeding pro se.

4. On May 13, 1999, the Bankruptcy Court filed an order dismissing the Hui Complaint with leave to amend. An amended Hui Complaint was subsequently filed. *See* Reply, June 17, 1999, at Exh. 3.

rendering of or failure to render professional services, *see id.* at 25, ¶ 11; past or present business activities, *see id.,* ¶ 12; and "any contract or agreement in connection with a business of an insured person," *id.,* ¶ 15.

On February 11, 1999, Allstate filed the instant motion for summary judgment. Defendant filed its opposition on March 18, 1999. On June 17, 1999, Allstate filed its reply.

## STANDARD OF REVIEW

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal. v. Campbell,* 138 F.3d 772, 780 (9th Cir. 1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See id.* at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.,* 809 F.2d at 630–31.

## DISCUSSION

Allstate raises five separate grounds for denying coverage to Defendant. At the

outset, the Court recognizes that the duty to defend is much broader than the duty to pay claims. *See, e.g., Commerce & Industry Ins. Co. v. Bank of Hawaii,* 73 Haw. 322, 326, 832 P.2d 733 (1992). The Court also notes that "[b]ecause the insurer's duty to defend its insured is contractual in nature, [a court] must look to the language of the policy involved to determine the scope of that duty." *Hawaiian Holiday Macadamia Nut Co. v. Industrial Indemnity Co.,* 76 Hawai'i 166, 169, 872 P.2d 230 (1994). "[W]here a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside of the policy's coverage." *Hawaiian Ins. & Guar. Co., Ltd. v. Blair, Ltd.,* 6 Haw.App. 447, 449, 726 P.2d 1310 (1986) (internal quotation marks omitted).

█ "An insurer has a duty to proceed in defense of a suit, at least to the point of establishing that liability upon which plaintiff was relying was in fact not covered by the policy, and not merely that it might not be." *Commerce & Industry Ins. Co. v. Bank of Hawaii,* 73 Haw. 322, 327, 832 P.2d 733 (1992). The Court observes that the duty to defend "is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract. 'Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend.'" *Hawaiian Holiday Macadamia Nut,* 76 Hawai'i at 169, 872 P.2d 230 (*quoting Hawaiian Ins. & Guar. Co. v. Blair, Ltd.,* 6 Haw.App. 447, 449, 726 P.2d 1310 (1986)) (holding that insurance agency was not obligated to provide a legal defense because the underlying complaint for property damage to tree seedlings confined its claims to intentional claims of breach of contract and fraud).

This view has recently been referred to as the "complaint allegation rule." *Pancakes of Hawaii, Inc. v. Pomare Properties Corp.,* 85 Hawai'i 286, 292, 944 P.2d 83 (1997) (applying the complaint allegation rule in the identical context of a non-insurance indemnity contract; "The duty to defend, to have any effect at all, must be determined when the complaint is filed."); *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 828 (Tex.1997) ("[U]nder the complaint allegation rule an insurer is entitled to rely solely on the factual allegations contained in the petition in conjunction with the terms of the policy to determine whether it has a duty to defend. The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit." (internal quotation marks omitted)).

█ Courts have frequently quoted the following passage in this context:

> It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defense, until it could confine the claim to a recovery that the policy did not cover.

*Commerce & Industry Ins. Co. v. Bank of Hawaii,* 73 Haw. 322, 326, 832 P.2d 733 (1992). Thus, an insurance company has an obligation to investigate to determine whether a third party's action raises a potential for coverage and thus implicates its duty to defend when "(1) the allegations in the pleadings should alert the insurer that there is a potential for coverage ...; (2) the allegations differ from facts the insurer knows or can readily determine; or (3) the allegations are ambiguous." *Bayudan v. Tradewind Ins. Co.,* 87 Hawai'i 379, 380, 957 P.2d 1061 (Haw.Ct.App. 1998).

**I ALLSTATE IS NOT OBLIGATED TO DEFEND OR PROVIDE COVERAGE BECAUSE THE UNDERLYING LAWSUITS DO NOT ARISE OUT OF BODILY INJURY OR PROPERTY DAMAGE.**

Allstate asserts that it is not obligated to provide coverage because the policy ex-

cludes coverage for "bodily injury" or "property damage" resulting from "an act or omission intended or expected to cause bodily injury or property damage." Plaintiff's Exh. E at 23. Defendant contends that this justification is factually unsupported because the plaintiffs in the underlying complaints claim to have suffered emotional distress, which falls within the definition of "bodily injuries." *See First Ins. Co. of Hawai'i v. Lawrence*, 77 Hawai'i 2, 881 P.2d 489 (1994).

Defendant relies on several statements by the underlying plaintiffs that they suffered emotional distress. *See* Defendant's Memorandum in Opposition, Mar. 18, 1999, at 4 – 5. First, Defendant emphasizes that the original Hui Complaint (for malicious prosecution) mentioned emotional distress, but only in the context of damages. *See* Plaintiff's Exh. C at 8 ¶ 14 ("Defendants' said actions have cause [sic] Plaintiffs to suffer damage to their reputation and severe emotional distress."). The amended Hui Complaint includes the following claim:

> 14. Plaintiffs are informed, believe and hereby allege that defendants ... caused debtor ExperVision, Inc. to advocate all those knowingly [sic] false allegations in AP. No. 95–5410 with the following intent:
>
> \* \* \* \* \* \*
>
> e) to *inflict humiliation, emotional pain and suffering upon plaintiffs.*

Reply, June 17, 1999, Exh. 3, at 6 – 7. Second, Defendant points to the underlying plaintiffs' responses to interrogatories. *See* Defendant's Exh. C & D at 12 ("Plaintiff suffered severe emotional distress."). Finally, Defendant directs the Court's attention to plaintiffs' January 29, 1999 Supplementary Opposition or Response to Defendants' Motion to Dismiss Under FRCP 12(b)(6). *See* Defendant's Exh. E at 2 ("Plaintiffs seek all relief the Court deem [sic] proper to address the emotional distress and humiliation inflicted [sic] upon plaintiffs."). Defendant contends that these references implicate the bodily inju-

ry clause of the policy, thereby triggering coverage.

■ The Court finds summary judgment in favor of Allstate appropriate for two reasons. First, the Court finds that neither of the underlying complaints asserts a claim for negligent infliction of emotional distress. The Hon Complaint does not even mention emotional distress. The original Hui Complaint mentioned emotional distress, but only in the context of damages; the amended Hui Complaint, at most, asserts only a claim for intentional infliction of emotional distress. However, intentional actions are explicitly excluded by the insurance policy (as discussed below). Accordingly, the Court finds that the underlying complaints do not raise a claim for negligent infliction of emotional distress.

■ Even if the Court concluded that one or both complaints alleged negligent infliction of emotional distress, the Court would still grant Allstate's summary judgment motion because the underlying complaints do not allege any sort of bodily injury or property damage. Although Defendant correctly states that recovery for negligent infliction of emotional distress is permitted without a showing of physically manifested harm, *see Ross v. Stouffer Hotel Co. Ltd., Inc.*, 76 Hawai'i 454, 465, 879 P.2d 1037 (1994), the Court also observes that Hawaii courts do not permit recovery for negligent infliction of emotional distress by one not physically injured unless there is some physical injury to property or a person resulting from the defendant's conduct. *See id.* at 465 – 66, 879 P.2d 1037.

■ In the instant case, the underlying Hui Complaint alleges only malicious prosecution and not any physical injury or property damage. The underlying Hon Complaint alleges only economic loss for lost investment monies without any claim of bodily injury or property damage. Numerous cases have held that economic loss does not constitute damage or injury to

property. *See, e.g., Hawaiian Ins. & Guar. Co., Ltd. v. Blair, Ltd.,* 6 Haw.App. 447, 454, 726 P.2d 1310 (1986) (holding that insurance company was not obligated to defend or indemnify defendant because the underlying plaintiff's claim was based upon loss of profits, which was not covered by the policy); *Keating v. National Union Fire Ins.,* 995 F.2d 154, 156 (9th Cir.1993) (holding that allegations of emotional and physical distress arose from economic loss and were not covered by the insurance policy; "It would expand coverage of these policies far beyond any reasonable expectation of the parties to sweep within their potential coverage any alleged emotional or physical distress that might result from economic loss that is itself clearly outside the scope of the policy."); *Allstate Ins. Co. v. Russo,* 829 F.Supp. 24, 27 (D.R.I.1993) ("The general rule is that loss of investment is purely economic loss and not injury to or destruction of tangible property."). The only case cited by Defendant, *First Ins. Co. v. Lawrence,* 77 Hawai'i 2, 881 P.2d 489 (1994), is inapposite because it involved physical harm to a person (wrongful death), not purely economic loss.

Defendant's reliance on *First Insurance Company v. Lawrence,* 77 Hawai'i 2, 881 P.2d 489 (1994) (insurance company sought declaration that it was not required to defend or indemnify policy owner who was involved in wrongful death automobile case), is misplaced. *First Insurance* is inapposite because it addressed the question of whether emotional distress constitutes "accidental harm" within the meaning of a Hawaii statute requiring drivers to obtain no-fault insurance policies to cover damages arising out of accidental harm. 77 Hawai'i at 6, 881 P.2d 489. The court held that the statutory term "accidental harm" included emotional distress. Conversely, the instant case does not involve a statutory term, nor does it involve any sort of physical injury.

Similarly, Defendant's reliance on *Voorhees v. Preferred Mutual Insurance Company,* 128 N.J. 165, 607 A.2d 1255 (1992),

is misplaced for at least two reasons. First, the Court observes that allegations of emotional distress arising from purely economic loss do not constitute bodily injury. *See Keating v. National Union Fire Ins.,* 995 F.2d 154, 156 (9th Cir.1993). Unlike *Voorhees,* which involved claims of negligent infliction of emotional distress resulting from allegedly defamatory comments, the instant case involves only economic losses that cannot serve as the basis for emotional distress claims. Thus, *Voorhees* does not contradict this proposition. Second, the Court emphasizes that the underlying complaints in the instant case, even if they allege claims of emotional distress (which the Court doubts), nonetheless do not include allegations of emotional distress resulting in physical manifestations. Accordingly, the Court finds that *Voorhees* does not mandate a different outcome.

## II *ALTERNATIVELY, ALLSTATE IS NOT OBLIGATED TO DEFEND OR PROVIDE COVERAGE BECAUSE THE UNDERLYING LAWSUITS INVOLVE INTENTIONAL CONDUCT.*

Alternatively, the Court holds that Allstate is not obligated to provide coverage because the underlying complaints allege intentional, as opposed to accidental, conduct, which is specifically excluded by the terms of the policy. The policy explicitly limits coverage to "bodily injury or property damage arising from an accident." Plaintiff's Separate and Concise Statement of Facts, Feb. 11, 1999, Exh. E, at 23. In addition, the policy specifically excludes from coverage "bodily injury" or "property damage" resulting from an "act or omission intended or expected to cause bodily injury or property damage," or "bodily injury" or "property damage" resulting from a "criminal act or omission." *Id.*

Defendant recognizes that many of the claims alleged in the underlying complaints involve intentional conduct that are not covered by the policy. However, Defendant maintains that because the underlying plaintiffs have raised at least some

claims governed by the policy, Allstate is required to defend against all claims.[5] With regard to the Hui Complaint, Defendant acknowledges that malicious prosecution and abuse of process are intentional torts, but nonetheless argues that the underlying plaintiffs have asserted a claim for "frivolous claims," and that this is not necessarily an intentional tort. With regard to the Hon Complaint, Defendant acknowledges that the underlying plaintiffs have asserted a claim for fraud in Count II, but argues that Count I's "material misrepresentations" claims must presumably involve claims of unintentional misrepresentation.

 The Court finds that summary judgment is appropriate because all of the facts alleged in the underlying complaints involved intentional conduct. In *Bayudan v. Tradewind Ins. Co., Ltd.*, 87 Hawai'i 379, 957 P.2d 1061 (Ct.App.1998), the court held that "where a third party suing an insured alleges a claim that does not raise the potential for coverage under the insured's homeowner's insurance policy, and all of the factual allegations and injuries alleged in other counts of the complaint are 'unquestionably implicated' in the uncovered claim [citation omitted], the insured does not have a duty to defend the insured." 87 Hawai'i at 380, 957 P.2d 1061 (holding that insurer had no duty to defend defendant because all of plaintiff's claims were inherently related to the kidnapping and assault claim, which was not covered under the policy). The Court went on to explain that "the mere relabeling of a claim for which coverage is excluded to a claim which could raise the potential for coverage is not a permissible manner in which to trigger an insurer's duty to defend." *Id.* at 387, 957 P.2d 1061.

In the instant case, the Court finds that summary judgment is appropriate with regard to the Hui Complaint because it al-

leges only intentional causes of action. Nowhere does the Hui Complaint assert any cause of action for "frivolous filings." Even if the complaint could be read to make this assertion, the Court finds that the underlying facts alleged in support of such a cause of action are entirely intentional. The fact that sanctions can be imposed for nonintentional frivolous pleadings, *see, e.g., Security Farms v. International Bth. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1016 (9th Cir.1997), is irrelevant because none of the facts alleged include unintentional conduct. Therefore, the Court finds that an alternative reason for granting Allstate's motion for summary judgment is the fact that the Hui Complaint involves only intentional conduct, which is excluded from the policy.

Similarly, with regard to the Hon Complaint, the Court finds that summary judgment is appropriate. The second cause of action in the Hon Complaint, which is entitled fraud and which Defendant acknowledges is based on intentional conduct, incorporates all of the facts previously alleged and asserts that "[w]hen defendants made the representations, they knew them to be false and made these representations with the intent to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance on these representations in the manner alleged herein." Plaintiff's Separate Concise Statement of Material Facts, Feb. 11, 1999, Exh. A, at ¶ 11. The first cause of action, entitled material misrepresentation, describes the various misrepresentations that were allegedly made by Defendant. As the *Bayudan* court explained, the name of a cause of action is irrelevant because the critical inquiry is what factual allegations the claims rest on. *See* 87 Hawai'i at 387, 957 P.2d 1061. In the instant case, the first cause of action for material misrepresentation rests on the same facts on which

---

**5.** The Court notes that Defendant also argues that it is premature to determine whether coverage exists because plaintiffs' claims in the Hui Complaint are "ambiguous" and "in flux." However, "[w]here pleadings fail to allege any basis for recovery within the coverage clause [of a policy] the insurer has no obligation to defend." *Commerce & Indus. Ins. Co. v. Bank of Hawaii*, 73 Haw. 322, 326, 832 P.2d 733 (1992) (citations omitted).

plaintiffs claim fraud. Thus, the Court concludes that both causes of action rest on intentional conduct that is not covered by the policy.

### III ALTERNATIVELY, ALLSTATE IS NOT OBLIGATED TO DEFEND OR PROVIDE COVERAGE BECAUSE DEFENDANT IS BEING SUED FOR NON–COVERED BUSINESS ACTIVITIES.

█ Alternatively, the Court finds that summary judgment is also appropriate because Defendant is being sued for business activities, which are not covered by the policy. Defendant claims that he is entitled to coverage because he has only a minor role in the ExperVision venture, pointing out that he did not participate in day-to-day business, attended only about six board meetings each year at his own expense, received no salary or other compensation from ExperVision, and had no ExperVision credit car or business account. Moreover, Defendant emphasizes that he is employed full-time with the Intco Group of Companies. Accordingly, Defendant contends that summary judgment is not appropriate on this ground because there are disputed facts relating to his involvement in ExperVision. The Court finds that summary judgment is appropriate. Assuming the truth of Defendant's statements regarding his minor role in ExperVision, the Court still finds that the broad terms of the policy encompass this relatively limited role and that coverage is not required.

The Court notes that both parties have cited cases with divergent views on what constitutes a business pursuit. *Compare Brickell v. United States Fire. Ins. Co.*, 436 So.2d 797, 801 (Miss.1983) (policy de-

fined business as "trade, profession, or occupation;" suit arose from insurance agent's activities in connection with automobile dealership not excluded; court held insured's business was insurance, not automobile sales), *Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855 (Ky.1992) (policy defined business as "trade, profession, or occupation," which precluded an "expansive interpretation;" court held that removing tires from property owned by partnership to which the insured belonged was not the insured's customary occupation), and *Brown v. Peninsular Fire Ins. Co.*, 171 Ga.App. 507, 508, 320 S.E.2d 208 (1984) ("business" was defined as "trade, profession or occupation;" court held that business pursuits exception did not apply to real estate broker who occasionally purchased and developed vacant land) *with Vallas v. Cincinnati Ins. Co.*, 624 So.2d 568, 571 (Ala.1993) (policy defined business as "trade, profession, or occupation;" court held that homeowner's policy did not cover defendant's involvement in limited partnership), *State Farm Fire and Cas. Co. v. Drasin*, 152 Cal.App.3d 864, 870, 199 Cal. Rptr. 749 (1984) (business defined as "a trade, profession, or occupation;" court held that policy did not cover mining venture), and *Grossman v. American Family Mut. Ins. Co.*, 461 N.W.2d 489 (Minn.Ct. App.1990) (holding that claims arising from limited partner's operation of a limited real estate venture fell within the business pursuits exclusion).[6] However, none of these cases are directly applicable to the instant case because they involve substantially different contract terms.

The Court need not determine whether Defendant's role with ExperVision constitutes a "business pursuit" because the instant case involves "business activities"

---

6. The Court notes that if the terms of the policy excluded "business pursuits" of an insured and "business" was defined as "trade, profession or occupation," then the Court would be compelled under Hawaii law to deny Allstate's motion for summary judgment on this ground due to contested facts relating to whether Defendant's activities with ExperVision were of such continuity or recurrent character to qualify as business pursuits. *See*

*Armed Forces Ins. Exchange v. Transamerica Ins. Co.*, 88 Hawai'i 373, 379–80 (Haw.Ct. App.1998) (utilizing a two-part test for determining whether an activity constitutes a business pursuit, namely whether there was a continuity or recurrent character, and whether there was a profit motive). However, the policy in the instant case utilized a much more expansive definition of "business."

and includes a much more expansive definition of the term "business." According to the policy, bodily injury or property damage "arising out of the past or present business activities of an insured person" is not covered. Plaintiff's Separate Concise Statement of Material Facts, Feb. 11, 1999, Exh. E, at 25. The term "business" is clearly defined as "any full or part-time activity of any kind engaged in for economic gain . . . ." *Id.* at 3. With these definitions in mind, even given Defendant's minor role, the Court still concludes that his role in ExperVision comes within the policy's "part-time activity" provision. Furthermore, the Court notes that although Plaintiff avers that he received no salary, compensation, or other reimbursement from ExperVision, this does not mean that he did not receive any economic gain for his activities. In fact, Defendant states that he assumed his role in ExperVision to "protect [his] investment in the company;" namely, Defendant owns stock in Tech–Invest, Inc., which was formed to invest in ExperVision. Defendant's Separate Concise Statement of Facts, Mar. 18, 1999, Exh. E, at ¶ 5. Thus, although Defendant may not draw any salary or other compensation from his activities with ExperVision, the Court concludes that his activities were still intended for economic gain. Therefore, the business activities exception applies and Defendant is not entitled to coverage.[7]

### CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED.

---

7. With regard to each of Court's reasons for concluding that Allstate is not obligated to provide coverage, the Court also finds that Allstate did not have an obligation to conduct an investigation of the allegations of the underlying complaints. Specifically, the Court finds that the allegations in the underlying complaints do not raise the potential for coverage, do not differ from facts the insurer knows or can readily determine, and are not ambiguous. *See Bayudan v. Tradewind Ins. Co.,* 87 Hawai'i 379, 380, 957 P.2d 1061 (Haw.Ct.App.1998). Accordingly, summary judgment in favor of Allstate is appropriate.